ALLEN, Judge.
Plaintiff-appellee, Borden, filed a petition for declaratory judgment and injunctive relief in which it sought to prohibit defendant-appellant, Florida Milk Commission, from setting prices to be paid by plaintiff, as a distributor, to milk producers for milk to be sold by plaintiff to schools.
The lower court found that the controlling of prices to be paid to the producer necessarily affected the price of milk to be sold to the public schools and enjoined the fixing of the “producer price” on “school milk.”
Beginning in 1957, “Class 1” milk had been administratively determined to include “school milk” and distributors were thereafter required to pay the highest price to producers for milk so used. The validity of this determination, insofar as it affects the price to be paid producers for milk used in the public schools, is in question in this appeal.
F.S. Section 501.04(12), F.S.A. reads:
“(12) The Florida milk commission is hereby expressly prohibited from fixing the price of milk sold and delivered to lunch rooms, of the public schools of Florida for consumption by students therein, and to all charitable organizations of a public or semi-public nature who buy milk for free distribution to the needy.”
The question raised in this appeal is:
“Does a statutory prohibition from establishing the price of milk sold and delivered to lunch rooms of the public schools of Florida preclude the Florida Milk Commission from establishing grades of milk and requiring distributors thereof to pay producing farmers an established price insofar as such established price must also be paid to producers for milk sold to the public schools ?”
The appellants argue that the court should follow the administrative interpretation of subsection (12), added to § 501.04 by amendment in 1953, since the Milk Commission, in 1957, adopted the contested regulation which, in effect, controls the price of milk sold to schools and charitable organizations.
The appellee counters this argument with the assertion that the administrative determination which should be followed was the first action of the Commission after the passage of the 1953 amendment when the Commission requested an opinion from the *558 Attorney General, who advised the Commission in his opinion of August 11, 1953, No. 053.198:
“Replying to question one, it is my opinion that the Florida Milk Commission shall not fix the price of milk at any level, either on the price to be paid to the producer or to the distributor, when said milk is to be sold and delivered to lunch rooms of the public schools of Florida for consumption by students therein, or to charitable organizations buying and distributing milk to the needy.”
The Milk Commission followed the advice of the Attorney General until 1957 when it adopted the regulation questioned in this proceeding.
The law generally recognizes the doctrine of contemporaneous construction of a statute by the body that administers a statute in question if the statute is at all ambiguous. See Gay v. Canada Dry Bottling Company of Florida, Fla.1952, 59 So.2d 788; Green v. Stuckey’s of Fanning Springs, Fla.1957, 99 So.2d 867.
The appellants in the proceedings before the circuit judge adduced the testimony of the Executive Secretary for the Florida Dairy Farmer’s Federation and a former Administrator of the Florida Milk Commission for the purpose of showing the effect of not regulating the price of milk purchased by the distributor from the producers for sale to the schools and charitable organizations. We do not deem it necessary to discuss the facts disclosed by this testimony. As we view this case, it involves purely a question of law as to the power of the Milk Commission to regulate the price of milk ultimately purchased by the schools at any level of consumption.
Prior to the adoption by the Legislature of Florida of the Milk Commission Acts, no state agency had the power to regulate the prices governing the sales of milk. Upon the passage of these acts such power was vested in the Milk Commission, but as we view the 1953 amendment to F.S. Section 501.04, F.S.A., supra, milk sold to schools and charitable organizations was thereby excepted from such regulation.
We concur with the statement of the able circuit judge who heard this case:
“That by enacting F.S. 501.04 and the aforesaid Section 501.04(12) [added in 1953] it was the intent of the Legislature to preclude and prohibit the Commission from controlling or affecting in any way the price at which the milk might be available to public schools and school children and to charitable organizations as aforesaid. The fixing of the producer price at the Class I price necessarily will have the direct and necessary tendency to affect the price at which milk is available to children in the public schools and at which charitable organizations must purchase it for distribution to the needy.”
The attorneys for the appellant argue that the 1953 amendment adversely affects the philosophy back of the original milk control acts and will adversely affect the producers. This could be true but the remedy is with the Legislature and not the courts. The Legislature of Florida, by adopting the various statutes affecting the sale of milk, could and did pass this amendment which, in effect, nullifies such control. This they had a constitutional right to do. If in fact the amendment adversely affects the producers, any subsequent legislature, if they deemed it advisable, could repeal the amendment. The courts, however, must interpret the act, not repeal it.
Finding no reversible error, the decree is affirmed.
SHANNON, C. J., and KANNER, J., concur.